## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EWIN OSCAR MARTINEZ,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:10-2156** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **UNITED STATES OF AMERICA,** | : | |
| **ET. AL,** | | |
| | : | |
| **Defendants** | | |
| | : | |

## <u>REPORT AND RECOMMENDATION</u>[1]

Presently pending before the court is the defendants' motion to dismiss

and for summary judgment (Doc. No. 43). On November 14, 2011, the

defendants filed a statement of material facts (Doc. No. 52) and a brief in

support of the motion to dismiss and for summary judgment (Doc. No. 53).[2]

On January 30, 2012, the plaintiff filed a brief in opposition to the motion.

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2]Defendants filed the motion to dismiss and for summary judgment on October 24, 2011. (Doc. No. 43). Defendants then filed motions for leave to exceed the page limitation (Doc. No. 45) and for an extension of time (Doc. No. 48) on November 3, 2011 and November 4, 2011, respectively. The motions were granted on November 4, 2011 and November 10, 2011, respectively. (Doc. No. 47; Doc. No. 49).

(Doc. No. 58). On February 13, 2012, the defendant's filed a brief in reply. (Doc. No. 59). The defendant's motion to dismiss and for summary judgment is presented in four parts and, for the reasons set forth below, should be **GRANTED**.

## I.   BACKGROUND[3]

On October 10, 2010, the plaintiff, currently an inmate at the Beckley Federal Correctional Institution in Beaver, West Virginia ("FCI Beckley") and formerly an inmate at Allenwood Federal Correctional Institution in White Deer, Pennsylvania ("FCI Allenwood") filed the instant *Bivens*[4] action alleging harassment, retaliation, intimidation and the conspiracy to commit such offenses resulting in the deprivation of his Constitutional rights, against various members of the FCI Allenwood staff and administration as well as the United States. (Doc. No. 1). On July 12, 2011, the plaintiff filed an amended complaint further articulating his allegations and adding additional defendants,

_____

[3]Contrary to Local Rule 56.1, the plaintiff has failed to file a responsive statement of facts with supporting record citations. The defendants' facts are therefore deemed admitted. Nevertheless, defendants' brief in support of their motion for dismissal and summary judgment relies on additional facts set forth in the plaintiff's amended complaint but not presented in the statement of material facts. Facts not included in the defendants' statement of material fact will be cited accordingly.

[4]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

namely members of the FCI Beckley staff and administration and the former

Warden of FCI Allenwood, Warden Ebbert. (Doc. No. 21).

<u>Allegations in the Plaintiff's Amended Complaint</u>

The plaintiff is currently serving a life sentence imposed by the United

States District Court for the Souther District of Florida. A native of Venezuela

(Doc. No. 21, p. 4), the plaintiff has been ordered to surrender to Immigration

and Customs Enforcement upon completion of his sentence for deportation

proceedings. The plaintiff was housed at FCI Allenwood from May 18, 2009

to March 29, 2010 at which point he was transferred to FCI Beckley.

While at FCI Allenwood, the plaintiff alleges numerous acts of

harassment, retaliation, and conspiracy. In addition, the plaintiff alleges that

he was deprived of his First Amendment Rights when Associate Warden

Nicklin, Unit Manager McIntyre and Case Manager Chamberlin denied him

access to the administrative remedy process and that Physicians Assistant

Powanda verbally abused the plaintiff and deprived him of his blood pressure

medication for a 15 day period from June 17, 2009 to July 6, 2009. (Doc. No.

21, p. 11).

The plaintiff claims that he was subject to harassment, retaliation and

conspiracy when Teacher Yearick, Senior Officer Specialists Fausey and

Alexander and former Warden Ebbert housed him in the Special Housing Unit (SHU) for 54 days on false charges. The plaintiff also alleges Senior Officer Specialist Fausey and Teacher McKimpson made false allegations against him on other occasions.

The plaintiff alleges that Senior Officer Specialist Alexander harassed and retaliated against him by placing him in a cell with inmates suffering from mental issues; requiring him to carry his personal property between cells despite the plaintiff's medical restriction; depriving him of his daily one-hour recreation; and housing him in a cell with a toilet limited to a two-flush per hour limit.

The plaintiff alleges that Assistant Supervisor of Education Zielinsky harassed, retaliated and conspired against him by denying him a job in the education department because the plaintiff was perceived as a "filer." Plaintiff also alleges that Correctional Officer Sawyer withheld wages from the plaintiff's assigned prison job. Plaintiff also alleges that his transfer to FCI Beckley was the result of harassment, retaliation and conspiracy by Senior Officer Specialist Fausey.

The plaintiff alleges that the above conduct constitutes intentional infliction of emotional distress. Similarly, the plaintiff claims intentional

4

infliction of emotional distress because he was falsely imprisoned in the SHU without evidence of wrong doing. In addition, the plaintiff claims that the United States is liable under the Federal Tort Claims Act because defendants were acting within the scope of their employment; Warden Ebbert and Associate Warden Nicklin were grossly negligent in failing to investigate the complaints plaintiff made in letters and "copouts" (Doc. No. 21, p. 18); and, Warden Ebbert and Associate Warden Nicklin conspired to participate in gross negligence by failing to protect the plaintiff from racist officers. Specifically, Plaintiff alleges that Senior Officer Specialist Fausey made remarks about FCI Allenwood being a 'white' prison. (Doc. No. 21, p. 12).

The plaintiff alleges additional intimidation, harassment and conspiracy by the defendants employed at FCI Beckely. In particular, the plaintiff alleges that the FCI Beckley defendants limited his food; filed false incident reports; denied his access to courts; and, denied his access to college courses.

The plaintiff also alleges that while at Victorville United States Penitentiary in California, he was prescribed blood pressure medication to which he was allergic despite indications in his medical chart that he was allergic to the medication. The plaintiff sued the doctor for gross negligence and alleges that knowledge of this lawsuit started the harassment he

5

experienced as FCI Allenwood. (Doc. No. 21, p. 6).

The plaintiff request compensatory and punitive damages in the amount of $5,000,000 from each defendant as well as pre and post judgment interest, costs of suit, attorneys fees and other relief the court deems proper.

Facts Regarding Specific Incidents and Prison Policies

In light of the plaintiffs allegations, the government offered additional facts regarding specific incidents and policies related to the plaintiffs allegations.

With regard to the allegation that the plaintiff was denied access to administrative remedies and the courts, defendants note that the plaintiff has filed more than 120 administrative remedies during his incarceration and that he filed 42 administrative remedies while housed at FCI Allenwood.

With regard to the deprivation of blood pressure medication, defendants note several Health Services staff policies. First, that staff make daily rounds in the SHU. Second, that though PA Powanda would have made some rounds during the 15 day period where the plaintiff claims he did not receive his medication, she would not have been the only staff member to make rounds during that period. Third, records show that the plaintiff was provided his medication on May 19, 2009 and that they were refilled on June 30, 2009.

Fourth, defendants note that it is an inmates responsibility to notify Health Services when a refill is needed. Finally, that PA Powanda has never denied an inmate a refill of medication.

With regard to the plaintiffs placement in the SHU, defendants present incident reports and disciplinary hearing findings. Specifically, defendants cite an incident report of June 17, 2009 for un-excused absence from work, failing to perform work as instructed and being in an unauthorized area. The reporting officer, Senior Officer Specialist Fausey, stated that the plaintiff was found in the Education Department when he was supposed to be working as a services orderly and without a proper pass. The plaintiff was moved to the SHU pending an investigation of possible violations of Bureau of Prison regulations. The Unit Disciplinary Committee held a hearing and referred the charges to the Disciplinary Hearing Officer (DHO). The DHO held a hearing and advised the plaintiff of his rights to a staff representative and witness testimony which the plaintiff waived. The DHO issued a written decision finding that the plaintiff had committed the prohibited act of un-excused absence from work and was sanction to 15 days disciplinary segregation. Plaintiff remained in the SHU until August 10, 2009. Senior Officer Specialist Alexander, mentioned in the plaintiff's allegation, had no involvement with the

incident report or placement of the plaintiff in the SHU.

With regard to cell conditions, cell mates, cell transfers and recreation, the defendants cite various prison policies. The plaintiff alleged that the toilet in his cell only flushed twice per hour. Defendants state that all toilets in all cells in the SHU are controlled by a computer allowing them to flush twice per half-hour. Moreover, the computer controlled flushing is managed by the Facilities Department at FCI Allenwood and SHU officers have no control over flushing restrictions. Similarly, recreation privileges are the same for all inmates housed in the SHU. They are allowed one hour of recreation five days per week and may decline to participate in recreation if they so choose. Access to the law library for inmates housed in the SHU is allowed pursuant to a first-come-first-served waiting list. Senior Officer Specialist Alexander never denied any inmate his recreation time or use of the law library. Housing assignments in the SHU are made with consideration for each inmate's needs, including their psychological status. Inmates are not triple bunked unless all cells are already double bunked. Senior Officer Specialist Alexander recalls that there was no need to triple bunk inmates while plaintiff was housed in the SHU. Inmates are responsible for carrying their personal property when moved from one cell to another. Records show that the plaintiff

had a medical restriction against lifting more than 15 pounds. While housed in the SHU inmates are allowed basic personal property which would not have weighed over 15 pounds. If the plaintiff's personal proper did, however, weight over 15 pounds he would not have been required to carry it. Personal property does not include an inmates mattress and therefore the plaintiff would not have been required to carry it between cells.

With regard to the plaintiff's transfer to FCI Beckley, defendants note the change in the plaintiff status to "will deport." Unit Manager McIntyre and Case Manager Chamberlin referred the plaintiff for transfer to the Bureau of Prisons (BOP) designation center in Texas because it was no longer necessary to house him at FCI Allenwood. No particular institution was recommended in the transfer referral. The BOP designation center approved the referral and designated the plaintiff for transfer to FCI Beckley.

With regard to the plaintiff's work assignment compensation, the plaintiff was assigned to the correctional services detail from August 12, 2009 to March 11, 2010. One of the possible assignments on this detail was cleaning windows. If there was not enough work on a particular day for all inmates assigned to the detail, some inmates were instructed to report to their housing unit. Inmates could then obtain passes to various parts of the institution for

their leisure time. Inmates were only compensated for actual time worked. During his assignment to the correctional services detail the plaintiff was paid $46.80 for time worked at an institutional rate of $0.12 per hour, plus a bonus of $6.60.[5]

Finally, the defendants note the residency and connections to Pennsylvania of the FCI Beckley defendants. Defendant Trump is a resident of West Virginia and conducts no business in the Commonwealth of Pennsylvania nor does she regularly perform work in Pennsylvania. Defendant Berkebile is a resident of Kentucky and currently the warden of Big Sandy United States Penitentiary. Defendant Berkebile has not resided in Pennsylvania since 1983 and has not worked in Pennsylvania during his career with the Federal Bureau of Prisons. Defendant Broadway is a resident of West Virginia and conducts no business in the Commonwealth of Pennsylvania nor does she regularly perform work in Pennsylvania.

─────────────────

[5]Though the defendant's Statement of Material Facts indicates that the plaintiff was paid $46.80 for working 335 hours at the rate of $0.12 per hour, the plaintiff submitted his TRUFACS inmate account statement which indicated that $22.50 in wages was added to and then pulled from his account (Doc. No. 58, Attachment 1). In their brief in response (Doc. No. 59) defendants note that plaintiff's time sheets for the period could not be located but attribute the deduction to a keying error and have arranged for the plaintiff to be paid the $22.50 in dispute.

Defendant Banton is a resident of West Virginia and conducts no business in the Commonwealth of Pennsylvania nor does she regularly perform work in Pennsylvania. Defendant Bowman is a resident of West Virginia and conducts no business in the Commonwealth of Pennsylvania nor does she regularly perform work in Pennsylvania. Defendant Nash is currently a resident of New Jersey and works at the Federal Detention Center in Philadelphia, Pennsylvania. Defendant Nash previously worked at the Allenwood United States Penitentiary from 1998 to 2003.

## II.    STANDARDS OF REVIEW

As an initial matter, it is important to note that this court is required to liberally construe a pro se plaintiff's pleadings; "however inartfully pleaded," the "allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In doing so, the court is to "apply the applicable law irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 687 (3d Cir. 2002). Nevertheless, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## A. Rule 12(b)(6) Standard of Review

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of "necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and

quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. Summary Judgment Under Rule 56 (c) Standard of Review

On some of the plaintiff's claims, the defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only when: (1) there are no material facts in dispute; and (2) one party is entitled to judgment as a matter of law. *See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir.1990) (citing Fed. R. Civ. Pro. 56(c)). A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir.2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996) (citations omitted). To meet this burden when the moving

14

party does not bear the burden of persuasion at trial, the moving party must show "'that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989) (quoting *Chippolini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d. Cir.1987)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir.1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. *Celotex*, 477 U.S. at 32; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d

238, 252 (3d Cir.1999).

## III.   ANALYSIS

In light of the facts in the record and the legal standards outlined above, the court will evaluate each of the four arguments raise in the defendants' motion.

### A. Respondeat Superior As the Basis of <u>Bivens</u> Action

Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971):

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia [or the Federal government], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Bivens* does not create any substantive rights. Rather, *Bivens* allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). To state a claim under *Bivens*, the plaintiff must show that the defendant, acting under color of Federal law,

16

deprived him of a right secured by the Constitution or laws of the United States. *Brown v. Philip Morris*, 250 F.3d 780, 800 (2001).

Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) and by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Moreover, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Finally, as the government notes, the Supreme Court indeed rejected the argument that a supervisor's mere knowledge of a subordinate's conduct amounts to the supervisor's own violation of the Constitution. *See Iqbal*, 556 U.S. at 677.

Defendants Warden Ebbert and Associate Warden Nicklin seek

dismissal of the complaint against each of them on the ground that the plaintiff has not set forth any personal allegations of wrongdoing, and therefore they could not have violated plaintiff's constitutional rights. The court agrees. A viable *Bivens* claim requires allegations of personal involvement on the part of each defendant. *See Iqbal*, 556 U.S. 675-67. As plaintiff has failed to set forth any allegations of personal involvement on the part of either defendant, the court recommends that the defendants' the motion to dismiss, with regard to defendants Ebbert and Nicklin, be granted.

### B. Failure to state a claim as to conspiracy; intentional infliction of emotional distress; false charges, due process violations, false imprisonment; denial of employment; racist and rude remarks; and, his claims under the Federal Tort Claims Act

As discussed above, a complaint will be dismissed under Rule 12(b)(6) if there is a "failure to states a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Though the Court will take all of plaintiff's allegations as true while evaluating a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550

18

U.S. 544, 127 S. Ct. at 1964-65). Applying this standard, the law applicable to each of the plaintiff's complaints will be discussed in turn.

        1.      Conspiracy Claim

When alleging a conspiracy, the plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out these objectives." *Flanagan v. Shively*, 783 F.Supp. 922 (M.D.Pa.1992), *aff'd* 980 F.2d 722 (3d Cir.1992). Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to support a conspiracy claim. *Id.* at 928.

Here, the plaintiff fails to offer facts as to the existence of a conspiracy among the FCI Allenwood Defendants or any of its broad objectives. Rather, the plaintiff attempts to rely on the sheer number of his allegations as evidence of some concerted action by the FCI Allenwood Defendants. Such conclusory allegations are insufficient under *Flanagan* and, therefore, the conspiracy claims should be dismissed.

        2.      Intentional Infliction of Emotional Distress Claim

In Pennsylvania, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is

subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa.2000). Such tortious conduct "'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa.1998)(quoting *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super.1987)). Under this standard, "[i]t has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Daughen v. Fox*, 539 A.2d 858, 861 (Pa.Super.1988)(quoting Restatement of Torts(2d) §46 Comment(d)).

Here, the plaintiff has failed to present any evidence regarding the claimed failure to investigate his complaints, his housing in the SHU or any other conduct on behalf of any of the FCI Allenwood Defendants which would rise to the extreme and outrageous level necessary to sustain a claim for intentional infliction of emotional distress. Thus, the plaintiff's claims of intentional infliction of emotional distress should be dismissed.

20

### 3. False Charges, Due Process, False Imprisonment, Cruel and Unusual Punishment

In *Heck v. Humphrey*, 512 U.S. 477, the Supreme Court held that an inmates's claim for damages under §1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff could demonstrate that the conviction or sentence had been previously invalidated. *Heck*, 512 U.S. at 487; *see also Dare v. U.S.*, 264 Fed.Appx. 183, 185 (3d Cir.2008)(finding *Heck* standard applies for federal prisoners bringing *Bivens* actions). This was so, the Court stated, because:

> ...to permit a convicted criminal defendant to proceed with a [Section 1983] claim would permit a collateral attack on the conviction through the vehicle of a civil suit...[T]his Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack.

*Heck*, 512 U.S. at 484-485 (internal citations omitted).

In *Edwards v. Balisok*, 520 U.S. 641, the Supreme Court extended its holding in *Heck* to include prison administrative disciplinary proceedings which result in an alleged deprivation to the inmate, such as loss of good-time credits or placement in segregated housing.

Though the plaintiff's claims clearly challenge the disciplinary proceeding

that led to his transfer to the SHU, nothing in the record indicates that the proceeding was previously invalidated. As such, a ruling by this court could imply the invalidity of the proceeding. Though administrative challenges and the possibility of a habeas petition remain viable avenues to dispute the disciplinary hearing, at this time, the motion to dismiss with regard to the plaintiff's claims of false charges, false imprisonment, due processes violations and cruel and unusual punishment related to his transfer to the SHU should be granted.

### 4. Denial of Employment

Under *Vieux v. Smith*, 2007 WL 1650579 (M.D.Pa. Jun. 5, 2007), inmates do not have a constitutionally protected right to a particular prison job. "[A]n inmate's assignment to a work detail does not implicate either a liberty interest or a property interest. Indeed, an inmate has no recognizable Constitutional right to a particular prison job." Id. at *3 (citing *Wright v. O'Hara*, 2002 WL 1870479, at *5 (E.D.Pa.2002) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts to either a property or liberty interest entitled to protection under the due process clause." (internal citations omitted)(quoting *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir.1975))).

Here, the plaintiff claims that Assistant Supervisor of Education Zielinsky

22

denied him a position in the education department because had a reputation as a "filer." Under *Vieux*, this denial is not a cognizable violation of property rights or a liberty interest. Therefore, the denial of employment claim should be dismissed.

> 5. Claims of False Charges and Unnecessary Visits to the Plaintiff's Cell Against Teacher McKimpson, Rude Language by Physicians Assistant Powanda, and Racist Comments by Senior Officer Specialist Fausey

Though this court will hold a pro se plaintiff to a less stringent standard when articulating their complaint, the court need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Plaintiff claims that Teacher McKimpson accused the plaintiff of using another inmate's computer password and would come to the plaintiff's cell for the purpose of provoking his mentally challenged cell mate. These are bald assertions which fail to assert any cognizable constitutional violation. Claims that PA Powanda used rude language and that Senior Officer Specialist Fausey made racists remarks are similarly bare allegations that are insufficient, even given the plaintiff's pro se status, to demonstrate a constitutional violation. As such, the claims of false charges and unnecessary visits by Teacher McKimpson, rude language used by PA Powanda and racists

comments by Senior Officer Specialist Fausey should be dismissed.

6. Federal Tort Claims Act

The Federal Tort Claims Act allows federal prisoners to pursue suits against the United States in an effort to recover for personal injuries sustained during confinement by reason of negligence of government employees. *Berman v. United States*, 205 F.Supp.2d 362 (M.D.Pa.2002)(Nealon, J.)(citing *United States v. Muniz*, 374 U.S. 150 (1963); 28 U.S.C. §1346(b)).   The primary purpose of the FTCA is to "remove sovereign immunity of the United States from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Id.* (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962); 28 U.S.C. §1346(b)). Under the FTCA, "the law of the place where the alleged act or omission occurred is to be applied." *Id.* (quoting *Turner v. Miller*, 679 F.Supp. 441, 443 (M.D.Pa.1987); 28 U.S.C. §1346 (b)).  In the instant action, the alleged incidents took place at FCI Allenwood, White Deer, Pennsylvania. As such, Pennsylvania law applies to this case.

In Pennsylvania, in order to prove a claim of negligence, the plaintiff must establish: (1) the existence of a duty or standard of care; (2) a negligent breach of that duty; (3) proximate causation between the breach and the

plaintiff's injury or loss; and (4) actual damages. *Carlotti v. Employees of General Elec. Fed. Credit Union No. 1161*, 717 A.2d 564 (Pa.Super.1998).

Here, the plaintiff has failed to offer facts establishing any of the four Pennsylvania requirements. In support of several of his claims, the Plaintiff posits that the United States is liable for the actions of the federal officers acting within the scope of their employment. In addition, the plaintiff specifically claims that Warden Ebbert and Associate Warden Nicklin were grossly negligent in failing to investigate his complaints and that they conspired to participate in gross negligence by failing to protect him from racist officers.

The plaintiff, however, fails to define what duty the United States owed to him, to demonstrate a negligent breach of that duty, to show a causal link between the breach and any injury suffered. Even reading his claims in the favorable light afforded to pro se plaintiff's there are still crucial failures in meeting the Pennsylvania standard. Even assuming the plaintiff had sufficiently demonstrated a duty to protect from racists officers and that there was a negligent breach of that duty, there are no assertions of any causal link to an injury, or any indication of an injury, resulting from a failure to protect. Thus, the FTCA claim should be dismissed.

### 7. Compensatory Damages

Defendants also argue that the plaintiff's claim for compensatory damages related to emotional or mental injuries suffered while in custody should be dismissed because he has failed to set forth any physical injury resulting from her conduct as required by 42 U.S.C. §1997e(e).

Title 42 U.S.C. §1997e(e) provides:

> [n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

This section applies only to claims for compensatory damages, as "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003)(citations omitted).

Here, the plaintiff has alleged no physical injury attributable to emotional distress resulting from defendants' actions. Thus, §1997e(e) precludes his claim for compensatory damages and defendants motion to dismiss the plaintiffs claim for compensatory damages should be granted.

### C. Summary Judgment as to the plaintiff's First Amendment retaliation claim, Eighth Amendment medical care claim, Eighth Amendment confinement claim and failure to pay wages claim

As discussed above, pursuant to Federal Rule of Civil Procedure 56, a district court may properly grant a motion for summary judgment when considering the pleadings, the discovery and disclosure materials on file as well as any affidavits, the court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56 (c).

### 1. First Amendment Retaliation Claim

In *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001), the Third Circuit set forth the elements necessary in order for a prisoner to succeed on a claim of retaliation. First, the prisoner must establish that the conduct which led to the alleged retaliation was constitutionally protected. *Id.* at 333 (citing *Thaddeus-X v. Bladder*, 175 F.3d 378, 389 (6th Cir.1999)).

Second, the prisoner must establish that he suffered some adverse action at the hands of prison officials. *Id.* (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied when the prisoner demonstrates that the action taken against him was sufficient to deter a person

of ordinary firmness from exercising his Constitutional rights. *Id.*

Finally, under *Rauser*, the prisoner must establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. Here, the Third Circuit has used a burden shifting framework where the prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial motivating factor in the decision to discipline him or retaliate against him. *Id.* (citing *Mount Healthy Bd. Of Ed. v. Doyle*, 429 U.S. 274, 297(1977)).  Once the prisoner meets his burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *Id.* Under this framework, the courts must also take into account the difficult task of prison administration. In *Turner v. Safely*, 482 U.S. 78, 89 (1987), the Supreme Court held that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." Therefore, even if a prisoner can demonstrate that the exercise of his constitutional rights was a substantial or motivating factor in the decision to discipline him, if prison officials can prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail on a claim of

retaliation. *Rauser*, 241 F.3d at 334.

Generally a prisoner has no constitutional right to a grievance process, *Thibodeau v. Watts*, No. 05-CV-2502, 2006 WL 89213, at *5 (M.D.Pa.2006); *Pressley v. Beard*, No. 04-CV-2535, 2005 WL 2347369, at *4 (M.D.Pa.2005); *Wilson v. Horn*, 971 F.Supp. 943, 946 (E.D.Pa.1997), *aff'd* 142 F. 3d 430 (3d Cir. 1998); Hoover v. Watson, 886 F.Supp. 410, 418 (D.Del.1995), *aff'd* 74 F.3d 1226 (3d Cir.1995); *see Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) ("[W]hile I applaud such procedures, and indeed urged their adoption, I do not suggest that the procedures are constitutionally mandated.") (internal citation omitted). Nevertheless, retaliation against a prisoner for filing grievances "implicates conduct protected by the First Amendment." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003) (citing Babcock v. White, 102 F.3d 267, 275-76 (7th Cir.1996)); *see Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Thaddeus-X*, 175 F. 3d at 387 (citing *Graham v. Connor*, 490 U.S. 386 (1989)). As such, the court will evaluate the additional *Rauser* requirements.

The plaintiff must show that the actions of prison officials would deter a person of ordinary firmness from exercising their rights. *See Rauser*, 241 F.3d at 333 (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). The

plaintiff appears to be undeterred in exercising of his First Amendment rights. The undisputed record shows that during his 11 years of incarceration, the plaintiff has filled more than 120 administrative remedies. Moreover, during his 10 months at FCI Allenwood, the plaintiff filed 42 administrative remedies.

While it appears the plaintiff has not been deterred in exercising his First Amendment rights, the plaintiff has also failed to demonstrate any causal link between the exercise of his rights and adverse actions taken against him. In particular, the plaintiff argues that he was housed in the SHU and eventually transferred to FCI Beckley in retaliation for exercising his constitutional rights. The undisputed record, however, shows that the plaintiff was housed in the SHU during the investigation of possible BOP rule violations, as punishment for violating BOP rules and while waiting for bed space in general population. Similarly, the undisputed record shows that the plaintiff was transferred to FCI Beckley by the BOP designation center because he was awaiting deportation and that no institution was recommended for transfer. The record indicates that these actions had legitimate penological purpose and would have been taken regardless of the plaintiff's exercise of his constitutional rights. Thus, with neither evidence of deterrence from exercising his rights nor a causal link to any adverse action in the record, the defendants are entitled to judgment as

a matter of law. Therefore the motion for summary judgement with respect to the plaintiff's First Amendment retaliation claim should be granted.

### 2. Eighth Amendment Deliberate Indifference to Medical Care Claim

To state a claim under the Eighth Amendment for denial of medical care, a prisoner-plaintiff must show that the defendants were deliberately indifferent to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A "serious" medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006 (1988). Deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to successfully state a claim, a plaintiff must allege that the defendant acted with a sufficiently culpable state of mind, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and must in some way "connect[] his factual allegations to the alleged mental states" of the defendants, *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir.2004).

Mere   negligence,   unsuccessful   medical   treatment,   or   medical

malpractice do not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill*, 372 F.3d at 237; *Lanzaro, 834 F.2d at 346*. "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993), and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment. . . which remains a question of sound professional judgment*" Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D.Pa.1996) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990)*.

"'Deliberate indifference,' therefore, requires 'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and citing *Farmer*, 511 U.S. at 842). The deliberate indifference standard is, of course, clearly

met when a doctor is intentionally inflicting pain on a prisoner. *Spruill*, 372 F.3d at 235.

The plaintiff alleges that PA Powanda denied him blood pressure medication for 15 days between June 17, 2009 and July 6, 2009. Nevertheless, the plaintiff's medical records reveal that he was given his medication on May 19, 2009 and that they were refilled on June 30, 2000. The record also states that it is an inmate's responsibility to notify the prison's Health Services when a refill is necessary and that PA Powanda has never denied a patient a refill. Even if some oversight or mis-communication indeed caused the plaintiff to be without his medication for the time he claims, the record simply does not support a finding that such circumstances were the result of PA Powanda's deliberate indifference to the plaintiff's care. Such a claim would be akin to malpractice, which, as discussed above, does not create a constitutional claim. Therefore, the motion for summary judgment with regard to the Eighth Amendment deliberate indifference to medical care claim should be granted.

### 3. Eighth Amendment Confinement Claim

It is well-established that the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As

discussed above, in order to prevail on a claim that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy an objective test and a subjective test. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective test, a plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.'" *See Farmer*, 511 U.S. at 834 (holding that prison official's acts must deprive inmate of "the minimal civilized measure of life's necessities" (quoting *Rhodes*, 452 U.S. at 347).  The subjective test requires the plaintiff to show that the defendants imposed those conditions with deliberate indifference. *See Farmer*, 511 U.S. at 834. Because exercise is one of the basic human needs protected by the Eighth Amendment, prisoners must be afforded some opportunity for exercise. *See Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir.1996); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985). Although a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time, *See Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir.), *cert. denied*, 506 U.S. 905 (1992), temporary denials of exercise may be constitutional, *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.1997) (holding that Eighth Amendment was not violated when inmate was denied outdoor

exercise for 21 days); *Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir.1992)(holding that Eighth Amendment was not violated when inmate in protective segregation was allowed 45 minutes of out-of-cell exercise per week); *Anderson*, 757 F.2d at 35 (holding that Eighth Amendment was not violated when inmates confined to special housing units were allowed one hour of outdoor exercise per day); and *Jordan v. Arnold*, 408 F.Supp. 869, 876-77 (M.D.Pa.1976) (holding that Eighth Amendment was not violated when inmates confined to special housing unit were allowed two hours of exercise per week).

Here, even the plaintiff's allegations about the conditions in the SHU alone likely fail to rise to the level of being inhumane. Namely, that the plaintiff was housed with inmates with mental problems, that he was forced to carry his mattress and personal effects weighing in excess of his medical restriction, that he was denied the opportunity for daily exercise and that the toilet in his cell only flushed twice per hour. The BOP policies in the record further explain the conditions in the SHU and demonstrate that the confinement did not run afoul of the Eighth Amendment. With regard to the plaintiff being housed with inmates with mental problems, the record indicates that all housing assignment in the SHU are made based on inmate needs, including

psychological status. With regard to carrying belongings during cell transfers, the record states that correctional officers were aware of the plaintiff's weight lifting restriction and that he was not forced to lift personal belongings weight more than 15 pounds. In addition, no prisoner is required, nor are they allowed, to carry their mattress between cells. With regard to exercise allowance, all inmates in the SHU are provided one hour of recreation time per day but may decline to participate. The record states that Senior Officer Specialist Alexander never denied the plaintiff's access to recreation time. Finally, all cells in the SHU have a computer controlled limit of two flushes per half-hour. In light of the record, the plaintiff cannot show that the conditions of his confinement rose to the level of being inhumane or depriving him of basic human needs. As such, the motion for summary judgment with regard to the plaintiff's Eighth Amendment conditions of confinement claim should be granted.

### 4. Failure to Pay Wages Claim

The plaintiff alleges that Officer Sawyer failed to pay him wages for work performed during his assignment to the correctional services detail from August 12, 2009 through March 11, 2010. The record explains that when there is not enough work for all inmates on the detail, those without tasks return to

their housing unit and are not compensated. The record reflects that plaintiff was paid for time worked during his assignment to the correctional services detail.[6] The motion for summary judgment as to the claim of failure to pay wages should be granted.

> **D. As to the FCI Beckley Defendants, the court lacks personal jurisdiction over them and the Middle District of Pennsylvania is not the proper venue; as to defendant Nash, the court does have personal jurisdiction, but the venue is improper.**

In order to resolve a case on the merits, a court must have authority over both the subject matter of the claims asserted and the parties. *See Ruhrgas AG v. Marathon Oil Co, 526 U.S. 574 (1999)*. A court may assert personal jurisdiction over a non-resident to the extent permitted by the law of the state in which the court is located. *See* Fed.R.Civ.P. 4(e)(1).

Pennsylvania's long-arm statute permits a court to exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States and [jurisdiction] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. 5322(b). In determining whether a court may

_____

[6]As discussed above, *supra* note 5, defendants attribute a disputed sum of wages paid to a clerical error and have agreed to pay the proper amount reflected in their records.

assert personal jurisdiction over a non-resident defendant, the court must consider: (1) whether the defendant has purposefully established minimum contacts with the forum state, such that he could reasonably anticipate being haled into court there, *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); and (2) whether those contacts, if sufficient, "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,'" *See Burger King*, 471 U.S. at 467-77 *(*quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Personal jurisdiction may be exercised under a theory of either general or specific jurisdiction. The plaintiff must show significantly more than minimum contacts to establish general jurisdiction. For general jurisdiction the defendant's contacts with the forum must be continuous and substantial. *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). "In these situations, the relationship between the plaintiff's claims and the defendant's forum state contacts is irrelevant--the court can exercise jurisdiction to hear any claim brought against the defendant." *Surgical Laser Technologies*, Inc. v. C.R. Bard, Inc., 921 F. Supp. 281, 283 (E.D. Pa.

1996).

As the record indicates, FCI Beckley Defendants Trump, Berkebile, Boadway, Banton and Bowman are not residents of Pennsylvania. In addition, none of these defendants work in Pennsylvania nor do they transact business in Pennsylvania. As such, the plaintiff cannot demonstrate the minimum contacts necessary for the court to assume personal jurisdiction.

Defendant Nash currently works in the Commonwealth of Pennsylvania and the record reflects several years of past work in Pennsylvania at Allenwood Penitentiary. This prolonged employment meets the substantial and continuous standard and is sufficient to created general jurisdiction over defendant Nash.

With respect to the FCI Beckley Defendants, the Middle District of Pennsylvania is not the proper venue because the allegations against the FCI Beckley Defendants did not occur in the Middle District. The proper venue for a *Bivens* action lies in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred..... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. §1391(b); *see*

*Cameron*, 983 F.2d at 256 (confirming that "[u]nder the Supreme Court's holding . . . , [ §1391(e) 's venue provision] applies only to suits against government officers in their official capacities, not to *Bivens* actions") (citing *Stafford v. Briggs*, 444 U.S. 527 (1980)).

Here, none of the FCI Beckely Defendants nor defendant Nash reside in Pennsylvania and though defendant Nash works in Pennsylvania, he works in the Eastern District of Pennsylvania. The events giving rise to the plaintiff's claims against the FCI Beckley Defendants occurred in West Virginia, not the Middle District of Pennsylvania. Finally, there is another district in which the action against the FCI Beckley Defendants could be brought, namely the Southern District of West Virginia, in which FCI Beckley sits.

Therefore, the claims against the FCI Beckley Defendants should be dismissed for lack of personal jurisdiction. The claims against Defendant Nash should not be dismissed based on lack of personal jurisdiction. Regardless, the claims against both the FCI Beckley Defendants and defendant Nash should be dismissed for improper venue.

 On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

1) Claims against defendants Ebbert and Nicklin should be **DISMISSED**;

2) Plaintiff's claims of conspiracy, intentional infliction of emotional distress, false charges and due process violations, right to particular employment, racist and rude remarks and his claims under the Federal Tort Claims Act should be **DISMISSED**;

3) Summary Judgment in favor of the FCI Allenwood Defendants should be **GRANTED**; and,

4) Claims against the FCI Beckley defendant should be **DISMISSED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**DATED: August 7, 2012**

O:\shared\REPORTS\2010 Reports\10-2156-01.wpd